UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARY E. CHARLES,          )
          )
      Plaintiff,          )
          )
          )
v.          )     No. 3:10-CV-134
          )     (VARLAN/GUYTON)
          )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,          )
          )
      Defendant.          )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support  [Docs. 8 and 9] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 10 and 11].  Plaintiff Mary E. Charles seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 31, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began May 15, 2005.  [Tr. 87-94].  The Plaintiff later amended her alleged onset date to May 1, 2006. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing.

On June 17, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 17-44]. On September 17, 2009, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since May 01, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: myalgia, diabetes, osteoarthritis of the neck, depression, and pain of the shoulder, spine, and hips (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has noninsulin dependent diabetes mellitus; well controlled by mediation. She complains of fibromyalgia/arthritis but a diagnosis of fibromyalgia is not well established. I find that she has myalgia that is compensated by medication. Neuropathy is not particularly limiting. She can perform light exertion; can stand 4 hours daily, 1 hour at a time; walk 4 hours daily, 1 hour at a time; and can sit 4 hours daily, 2 hours at a time. Manual dexterity/fingering is intact. She cannot use her arms over head and should avoid extremes of temperature. She is obese. There is no evidence of severe emotional problems.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on May 5, 1956 and is almost 50 years old, which is defined as closely approaching advanced age, on the alleged disability onset date.  (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 01, 2006 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 10-16].

## II.     DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists

for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.  The burden shifts

to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is

work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc.

Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec.,  486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached

through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.     **MEDICAL EVIDENCE**

Plaintiff presented to Marilyn Agee , M.D., in November 2005, with complaints of bilateral shoulder pain and weakness radiating into her neck and worsened with raising her arms over her head. [Tr. 312]. She also reported stiffness, weakness, and achiness in her hands. [Tr. 312]. On examination, Plaintiff had bilateral shoulder tenderness with mild pain with movement; Dr. Agee prescribed Motrin. [Tr. 312].

In May 2006, Plaintiff returned to Dr. Agee for a preventative medicine examination and complained of periodic fatigue with achiness for the past six months. [Tr. 308-09]. A

musculoskeletal examination, however, was normal. [Tr. 308]. Dr. Agee noted that Plaintiff had

chronic fatigue, obesity, and osteoporosis, as well as mild early onset type II diabetes. [Tr. 309-10].

Dr. Agee recommended Plaintiff take Advil or Aleve for myalgia/myositis and prescribed medication

for diabetes [Tr. 310].

The Plaintiff returned to Dr. Agee for a follow-up appointment approximately three months

later and complained of pain in the back of her legs with numbness radiating into her feet. [Tr. 305].

Dr. Agee noted that Plaintiff had tenderness in her calves and claudication after one-half mile of

walking. [Tr. 305-06]. Dr. Agee continued Plaintiff's treatment regimen for diabetes and ordered

an arterial study for her peripheral vascular disorder. [Tr. 306].

In October 2006, the Plaintiff presented to Dr. Agee with complaints of pain in her tailbone,

lower back, left hip, and legs with difficulty walking after sitting. [Tr. 302]. The Plaintiff reported

that these symptoms improved with walking. On examination, the Plaintiff had tenderness in her

lower lumbar spine, sacrum, and paravertebral area. [Tr. 302]. Dr. Agee ordered x-rays. [Tr. 302].

The x-rays of Plaintiff's sacrum and coccyx revealed osteopenia but no other abnormalities, and an

x-ray of the lumbar spine was normal. [Tr. 321].

The Plaintiff moved from Ohio to Tennessee, and she presented to Tina Furcolo, D.O., to

establish herself as a new patient in December 2006. [Tr. 189]. The Plaintiff reported that she had

conditions including osteoporosis and diabetes. [Tr. 189]. The examination of the Plaintiff was

essentially normal, and Dr. Furcolo continued her treatment regimen for diabetes. [Tr. 189].

Two months later, Plaintiff presented to Dr. Furcolo with complaints of right foot pain. [Tr.

188]. Dr. Furcolo noted that Plaintiff had right foot tenderness but a good range of motion. Dr.

Furcolo recommended using good arch support, taking Ibuprofen, and performing stretches. [Tr.

188].  The Plaintiff returned to Dr. Furcolo in June 2007 with complaints including tingling in her feet.  [Tr. 187].  Dr. Furcolo ordered tests due to questionable peripheral neuropathy.  [Tr. 187].  During a follow-up visit in August 2007, Dr. Furcolo noted that Plaintiff's diabetes was well-controlled at the last appointment.  [Tr. 186].

On August 30, 2007, Dr. Furcolo performed a musculoskeletal examination of Plaintiff on request from the state disability determination section ("DDS").  [Tr. 185].  The Plaintiff stated that she had difficulty remaining on her feet for more than three or four hours at a time.  [Tr. 185].  The Plaintiff also reported foot, knee, and lower back pain and stated that she could not sit for more than a few hours.  [Tr. 185].  Dr. Furcolo found that she was limited in extension and flexion in her cervical and lumbar spine, had "some left shoulder and bilateral hip restrictions in active and passive abduction to 90 degrees," and displayed normal ranges of motion in her wrists, ankles, knees, elbows, and fingers [Tr. 185].

In September 2007, Jeffrey Summers performed a consultative examination of Plaintiff for the state DDS.  [Tr. 195-99].[1]  The Plaintiff complained of stiffness and aching pain in all of her joints for the previous ten years with her worst symptoms in her back and neck [Tr. 195].  She stated that a number of activities worsened her back pain including bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting more than 20 pounds.  [Tr. 195].  The Plaintiff reported worsened neck pain when elevating her arms above her shoulders frequently and when twisting and

---

[1] Dr. Summers' report appears to have a rubber stamp of his signature in the signature block. [Tr. 195-99].  According to the regulations, all consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. 20 C.F.R. § 404.1519n(e).  Further, a rubber stamp signature from a consultative examiner is not acceptable.  Id.  While Dr. Summers's reports technically violates 20 C.F.R. § 404.1519n(e), the Plaintiff has not alleged that Dr. Summers did not perform the examination or properly set forth his findings, nor has the Court found any evidence indicating such.

8

turning her head. [Tr. 195]. The Plaintiff stated that she took medication for her diabetes with good results, but she reported "numbness and tingling" in her extremities. [Tr. 198]. She reported difficulty grasping, fingering, feeling, and manipulating objects on a repetitive basis as well as difficulty balancing, climbing, working at heights, and standing and walking for more than six hours per workday. [Tr. 195]. The Plaintiff reported modest improvement in her condition with medication [Tr. 195].

On examination, Dr. Summers found that the Plaintiff was obese and had a full range of motion in all of her joints, except for her cervical and lumbar spine. [Tr. 197]. Her manual dexterity and fingering abilities were intact [Tr. 197]. The Plaintiff was able to ambulate normally and could stand and walk on her heels and toes, perform a full squat, and stand on either leg singly. [Tr. 197]. A lumbosacral spine x-ray performed the same day revealed mild to moderate reactive sclerosis suggesting sacroiliitis. [Tr. 199].

Dr. Summers diagnosed the Plaintiff with osteoarthritis/osteoporosis, type II diabetes with probable mild neuropathy in her hands and feet, and stable glaucoma. [Tr. 197]. Dr. Summers opined that due to her back pain, the Plaintiff would have difficulty bending, kneeling, squatting, crouching, crawling, climbing, and lifting more than 20 pounds on a frequent basis. [Tr. 198]. He opined that due to neck pain, Plaintiff was limited in her ability to twist/turn her head and elevate her arms above her shoulders on a repetitive basis. [Tr. 198]. Dr. Summers stated that Plaintiff would be able to work from a seated position, drive, and operate hand/foot controls for eight hours per workday. [Tr. 198]. Dr. Summers opined that she should avoid repetitive grasping, fingering, feeling, and manipulating objects and should avoid balancing, climbing, and working from heights. [Tr. 198]. He also opined that she should not stand or walk for more than six hours per workday [Tr.

198].

On September 25, 2007, Anita Johnson, M.D., reviewed Plaintiff's medical records for the DDS and created an assessment of her physical abilities. [Tr. 200-207]. Dr. Johnson opined that Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. [Tr. 201]. Dr. Johnson opined that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and perform a range of climbing activities. [Tr. 202]. Dr. Johnson noted that Dr. Summers assessed more restrictive limitations, but Dr. Johnson opined that Dr. Summers's findings were "too restrictive [without] sufficient medical evidence to support these restrictions." [Tr. 207].

On November 7, 2007, Plaintiff presented to Dr. Furcolo for treatment of her iron deficiency. At the visit, Dr. Furcolo noted that the Plaintiff still reported "some paresthesias in her hands and feet." [Tr. 213]. Dr. Furcolo stated that Plaintiff's diabetes was "basically diet controlled" and "really has not been that bad." [Tr. 213]. Dr. Furcolo stated that she "would not suspect that [the Plaintiff] would have a peripheral neuropathy." [Tr. 213].

During the visit, Dr. Furcolo examined the Plaintiff and found that she had a good range of motion in most joints and no sensory deficits. [Tr. 213]. Dr. Furcolo ordered laboratory tests, relating to the Plaintiff's iron deficiency and diabetes, and continued Plaintiff's treatment regimen. [Tr. 213].

On November 15, 2007, Dr. Furcolo completed an assessment of Plaintiff's physical abilities at Plaintiff's request. [Tr. 211-12]. Dr. Furcolo opined that Plaintiff could sit for two hours at a time, stand for two hours at a time, and walk for two hours at a time. [Tr. 212]. Dr. Furcolo also opined that Plaintiff could sit 4 hours total during an 8-hour workday, stand for 4 hours total during an 8-

10

hour workday, and walk for 4 hours total during an 8-hour workday, with rest. [Tr. 212]. Dr. Furcolo indicated that the Plaintiff could occasionally lift and carry at least 25 pounds and frequently lift and carry up to 20 pounds. [Tr. 212]. Dr. Furcolo found that the Plaintiff could occasionally bend, squat, climb, and reach, but never crawl. [Tr. 212]. Dr. Furcolo also indicated that the Plaintiff should restrict her exposure to dust, fumes, and gases, moderately. [Tr. 212].

In February 2008, Plaintiff presented to Kirsta Norwood, a physician's assistant, for a follow-up on her diabetes and reported difficulty with osteoarthritis in her back and right hip and numbness in her feet and occasionally in her hands with decreased strength. [Tr. 209]. Ms. Norwood prescribed Mobic for osteoarthritis and Neurontin for peripheral neuropathy. [Tr. 210].

Later that month, Frank Pennington, M.D., reviewed Plaintiff's records for the DDS and created an assessment of her physical abilities. [Tr. 221-28]. Dr. Pennington indicated that Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. [Tr. 222]. Dr. Pennington opined that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and perform a range of climbing activities. [Tr. 223].

In June 2008, Plaintiff presented to Ms. Norwood for a follow-up appointment to address possible fibromyalgia. [Tr. 251]. The Plaintiff had diffuse arthralgias and myalgias and tender points in her neck, shoulders, elbows, and hips. [Tr. 251]. The examination of the Plaintiff was otherwise normal. Ms. Norwood ordered laboratory tests, but she did not diagnose fibromyalgia. [Tr. 251].

On October 14, 2008, Plaintiff presented to Nurse Barbara Witherspoon for a routine check-up. [Tr. 248-50]. The Plaintiff complained primarily of left hip pain, with additional pain in other

areas. [Tr. 248]. Ms. Witherspoon noted that the Plaintiff "needs to lose quite a bit of weight," and the Plaintiff reported feeling fatigued and admitted difficulty sleeping. [Tr. 248].

On examination, Plaintiff had a pulling sensation with hip rotation and "a complaint of generalized tenderness and mild pain." [Tr. 249]. Ms. Witherspoon noted that Plaintiff did not have trigger point tenderness classically diagnostic for fibromyalgia, noting "the pain in fibromyalgia tender points was no worse than that of other areas." [Tr. 249]. Ms. Witherspoon diagnosed myalgias of uncertain origin. [Tr. 249]. Ms. Witherspoon also ordered hips and cervical spine x-rays and laboratory tests. [Tr. 249]. The left hip x-ray was normal and the cervical spine x-ray revealed mild degenerative arthritic spurring of C4 through C6, but was otherwise normal. [Tr. 230-31].

On November 11, 2008, the Plaintiff returned to Ms. Witherspoon with continuing complaints of hip pain and generalized tenderness. [Tr. 247]. The Plaintiff reported sleeping better and feeling better after starting Celexa, a depression medication. [Tr. 247]. On examination, Plaintiff had 16 tender points diagnostic for fibromyalgia and Ms. Witherspoon recommended tapering off Neurontin and starting Lyrica. [Tr. 247].

On March 28, 2009, Terry Arrington, M.D., examined Plaintiff for the DDS. [Tr. 259-64]. The Plaintiff complained of fibromyalgia pain all over, burning pain and tingling in her legs and feet, numbness in her feet, and neck pain due to osteoarthritis. [Tr. 259]. The Plaintiff reported being able to walk for 15 minutes and stand for 3 minutes before having to sit down and rest. [Tr. 260]. She did not use an assistive device to ambulate. [Tr. 260]. The Plaintiff rose easily from her chair, had an antalgic gait to the left, and displayed limited range of motion in her cervical and lumbar spine. [Tr. 261]. The Plaintiff had tenderness to palpitation in the cervical, thoracic, and lumbar

spine and had significant tender points in multiple areas. [Tr. 261]. Her range of motion was otherwise normal and she had full strength in her upper and lower extremities, except for 4/5 strength in her hips on flexion. [Tr. 261]. The Plaintiff displayed decreased thigh sensation and tenderness in the soles of her feet. [Tr. 261].

Dr. Arrington opined that she was precluded from performing significant exertional activity due to fibromyalgia pain and was limited to walking for no more than 30 to 45 minutes at a time and standing for no more than one hour at a time prior to sitting down and resting. [Tr. 262]. Due to obesity and decreased spine ranges of motion, Dr. Arrington opined that she should avoid stooping, crawling, crouching and kneeling and should not perform routine overhead work. [Tr. 262].

On April 15, 2009, Plaintiff presented to Ms. Witherspoon for a regular check-up and reported that after starting Lyrica, she was sleeping better and walking daily. [Tr. 335]. The Plaintiff reported that she fell once due to dizziness and broke her wrist. [Tr. 335]. Ms. Witherspoon increased her diabetes medication. [Tr. 335].

Later that month, Susan Warner, M.D., reviewed Plaintiff's medical records for the DDS and opined that she could: occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for 4 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. [Tr. 270]. Dr. Warner also opined that the Plaintiff could occasionally push/pull with her lower extremities. [Tr. 270]. Dr. Warner opined that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she opined that the Plaintiff could never climb ladders, ropes, and scaffolds. [Tr. 271].

## V. POSITIONS OF THE PARTIES

The Plaintiff asserts three arguments in favor of remand or a decision in her favor. First, she contends that the ALJ erred by failing to discuss a Vocational Analysis Worksheet completed by the Tennessee Department of Rehabilitation Services. Second, she argues that the ALJ erred by rejecting or discounting the opinions of Ms. Witherspoon, Dr. Arrington,[2] and Dr. Warner.[3] Finally, the Plaintiff argues that the ALJ erred by relying upon the testimony of the vocational expert.

The Commissioner, for the reasons more fully stated below, maintains that the ALJ's analysis and disability determination are supported by substantial evidence.

## VI. ANALYSIS

The Court will address each of the Plaintiff's arguments in turn.

### A. The Vocational Analysis Worksheet

The Plaintiff argues that the ALJ erred by failing to discuss "the partially favorable determination by the state agency and the vocational analysis by Richard King, with the Tennessee Department of Rehabilitation." [Doc. 9 at 13]. The Plaintiff's argument references a "Vocational Analysis Worksheet," completed by Richard A. King, [Tr. 139-41]. The Plaintiff argues that the ALJ should have awarded benefits based upon this worksheet or he should have at least directly addressed the worksheet.

---

[2]The Plaintiff argues that the ALJ should have given weight to the opinion of "Arlington." There is no source in the record by that name, so it appears the Plaintiff intended to argue that the ALJ erred by rejecting the opinion of Dr. Arrington.

[3]The Plaintiff argues that the ALJ should have given weight to the opinion of "Warren." There is no source in the record by that name, so it appears the Plaintiff intended to argue that the ALJ erred by rejecting the opinion of Dr. Warner.

The Commissioner responds that the Plaintiff's argument is misleading because DDS, the agency for which the analysis was completed, denied the Plaintiff's application for disability both initially and upon reconsideration. [Tr. 48-49, 54-60]. The Commissioner maintains that the worksheet cited by the Plaintiff neither supported nor necessitated a disability determination. [Doc. 11 at 11]. Finally, the Commissioner, notes that the Plaintiff cites no authority in support of her contention that an ALJ is obligated to consider internal state DDS claims processing worksheets or that rejection of such worksheets must be based upon substantial evidence. [Doc. 11 at 11].

The Court has reviewed the worksheet and the applicable case law, and the Court finds that the ALJ did not err either by failing to find disability based upon the worksheet or by failing to specifically discuss the worksheet. As the Commissioner noted, the Plaintiff has not cited the Court to any authority supporting her position, nor has the Court's own review of the case law yielded any support for this position. To the contrary, other courts that have addressed such worksheets have treated them as simply evidence of record. See Barbee v. Astrue, 2009 WL 4110259, at *7 (Carter, Mag. J.) (E.D. Tenn. Nov. 23, 2009). The ALJ was not required to afford controlling weight to the worksheet.

Moreover, the ALJ was not required to specifically discuss the worksheet or the conclusions contained therein. See Simons v. Barnhart, 114 Fed. App'x. 727, 733 (6th Cir. 2004) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Accordingly, the Court finds that this allegation of error is not well-taken.

## B.     The Opinions of Ms. Witherspoon, Dr. Arrington, and Dr. Warner

The Plaintiff also argues that the ALJ rejected the opinions of Ms. Witherspoon, Dr. Arrington, and Dr. Warner and that his decision to reject these opinions is not supported by substantial evidence. [Doc. 9 at 10].

The Commissioner responds that the Plaintiff has "entirely failed to develop her argument and it should therefore be disregarded." [Doc. 11 at 15]. The Commissioner maintains that Ms. Witherspoon did not provide an opinion that was probative of the Plaintiff's functional limitations in this case. As to Dr. Warner and Dr. Arrington, the Commissioner contends that the ALJ either incorporated the limitations identified by Dr. Warner and Dr. Arrington or the jobs identified by the VE could be performed by a person with the limitations identified. [Doc. 11 at 15].

The Court finds that the Plaintiff has failed to develop her argument as to Ms. Witherspoon, Dr. Arrington, and Dr. Warner. The Plaintiff states, simply, "The ALJ's rejection of Witherspoon, Arlington, King and Warren is not supported by substantial evidence . . . ."[4] The Plaintiff then turns to her arguments regarding the ALJ's reliance on the testimony of the vocational expert. The Plaintiff does not cite the Court to any specific finding by the ALJ or portion of the ALJ's decision with which she takes issue, nor does she cite the Court to opinions and evidence from these sources that she contends were improperly discounted.

The Court has thoroughly reviewed the Plaintiff's Memorandum and finds that this argument was not developed beyond the Plaintiff's bare-bones assertion. It is therefore waived. See El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (citing McPherson v. Kelsey, 125 F.3d 989,

---

[4]See, supra, n 2-3.

995-96 (6th Cir.1997)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Notwithstanding and in the alternative, the Court finds that Ms. Witherspoon did not provide an opinion that was probative of Plaintiff's functional limitations, and the ALJ either incorporated the limitations identified by Dr. Warner and Dr. Arrington or the light-work jobs identified by the vocational could be performed by a person with such limitations.

Accordingly, the Court finds that this assertion of error is not well-taken.

## C.     The Testimony of the Vocational Expert

Finally, the Plaintiff argues that the ALJ erred by relying on the vocational expert testimony in this case. [Doc. 9 at 10]. The Plaintiff alleges that the ALJ erred in his conclusion that the Plaintiff retained the capacity to perform jobs available in the national and local economies, based upon the vocational expert's testimony. The Plaintiff argues that the ALJ's hypothetical was improper and did not accurately advise the vocational expert of the Plaintiff's restrictions – specifically, with regard to Dr. Summers and Dr. Furcolo. [Doc. 9 at 11-12].

The Commissioner responds that the residual functional capacity determination was supported by substantial evidence and the hypothetical question posed to the vocational expert reflected those limitations supported by the record. [Doc. 11 at 20]. The Commissioner, generally, notes that the ALJ found the Plaintiff could perform light work, which requires occasionally lifting 20 pounds and frequently lifting 10 pounds, and that no medical source opined that the Plaintiff was incapable of the lifting and carrying required by this level of work. [Doc. 11 at 18]. The Commissioner maintains that the ALJ's residual functional capacity determination and hypothetical

question to the vocational expert are supported by substantial evidence of record. [Doc. 11 at 18-19].

In his decision, the ALJ found that the Plaintiff retained the residual functional capacity to: perform light exertion; stand for 4 hours daily, 1 hour at a time; walk 4 hours daily, 1 hour at a time; and sit 4 hours daily, 2 hours at a time. The ALJ found that the Plaintiff's dexterity/fingering was intact, but he concluded she could not reach her arms overhead and should avoid extreme temperatures. The ALJ found the Plaintiff was obese, but he found no evidence of severe emotional problems. [Tr. 11].

The ALJ posed the following hypothetical question to the vocational expert:

> Assume that you have an individual who's closely approaching advanced age at 53, has a ninth grade education and has the same past relevant work as the claimant. Assume the individual has non-insulin dependent diabetes that's well controlled by medications. She complains of glaucoma and blurred vision at times, however. There are complaints of fibromyalgia and arthritis but a diagnosis of fibromyalgia from the record is not well established. It's not to say that she doesn't have soft tissue or muscular pain but that actual diagnosis of fibromyalgia again is not firmly established and it appears that this is [controlled] to some degree with medications. Neuropathy is not particularly limiting at this point it appears. I want to assume that she's capable of light exertion; that she can stand for four hours a day, one hour at a time; that she can walk four hours a day, one hour at a time and that she can sit four hours a day, two hours at a time. Assume that manual dexterity and fingering are still in tact and that she cannot use her arms over her head, however. I'm not saying that very rarely she couldn't reach over her head but she couldn't – the claimant had described carrying trays, holding them overhead. She can't do that kind of thing with her physical discomfort. I think she has to avoid extremes of temperature cold and heat and I don't see evidence of any severe emotional points at this points.

[Tr. 39-40].

In response, the vocational expert explained that, given this hypothetical, the Plaintiff could not perform her past relevant work. [Tr. 40]. The vocational expert confirmed that other jobs could be performed with these limitations. The vocational expert testified that Plaintiff could perform light jobs at the unskilled level that would afford a sit/stand option, for example a production inspector. [Tr. 40]. The vocational expert reduced the number of these jobs in half to allow for a sit/stand option. [Tr. 40]. The vocational expert testified that the Plaintiff's need to avoid stooping, crawling, crouching, and kneeling would not prevent her from performing these jobs, nor would limitations associated with being overweight. [Tr. 41]. The vocational expert testified that these jobs were available in significant numbers in the local and national economies. [See Tr. 40].

1.      *Incorporation of Dr. Summers's Opinion*

The Plaintiff first argues that the ALJ erred by stating that he granted "significant weight to the opinion of Dr. Summers," but not including all of the restrictions found by Dr. Summers in the hypothetical question. [Doc. 9 at 11].

The Commissioner responds that Dr. Summers signed his opinion via a rubber stamp which raises concerns as to its validity, see 20 C.F.R. § 404.1519n(e). [Doc. 11 at 18]. The Commissioner also generally maintains that the ALJ's hypothetical question was supported by substantial evidence in the record. [Doc. 11 at 20].

The Court has reviewed Dr. Summers's opinion [Tr. 195-98], wherein Dr. Summers notes, *inter alia,* that the Plaintiff reports she experiences pain when she lifts greater than 20 pounds or when she stoops, bends, kneels, squats, crouches, crawls, or climbs, [Tr. 198]. Dr. Summers concludes that the Plaintiff's manual strength and dexterity are intact, but she should avoid repetitive

fingering. [Tr. 198]. Dr. Summers explained that the Plaintiff should avoid balancing, climbing, etc., and should stand and walk for only 6 hours in a day. [Tr. 198].

The Court has considered the Plaintiff's objection, and the Court finds that, to a large extent, the ALJ incorporated Dr. Summers's findings in the hypothetical question. The ALJ found the Plaintiff was limited to light exertion, which is consistent with Dr. Summers's note regarding the Plaintiff's complaints of pain when lifting more than 20 pounds. The ALJ presented sit/stand options that allowed for slightly more time spent sitting/standing in a work day than Dr. Summers had found, but the ALJ also limited the Plaintiff's sitting/standing times to one hour periods, a more restrictive finding than that supplied by Dr. Summers.

To the extent ALJ's hypothetical was not consistent with Dr. Summers's other findings, such as fingering, the Court finds that the ALJ's hypothetical and his decision to discount certain portions of Dr. Summers's opinion is well-supported by the evidence in the record.

2.    *Incorporation of Dr. Furcolo's Opinion*

The Plaintiff also argues that the ALJ erred in his hypothetical by failing to convey certain restrictions found by Dr. Furcolo to the vocational expert. The Plaintiff notes that the ALJ found "the opinion in 7F is more persuasive as to the claimant's ability to walk, stand and sit." [Doc. 9 at 11 (citing Tr. 14)]. Exhibit 7F contains a worksheet completed by Dr. Furcolo on November 15, 2007, to which the Plaintiff directs the Court's attention. [Tr. 212]. The Plaintiff contends that the ALJ erred by failing to include Dr. Furcolo's indication that the Plaintiff should avoid dust, fumes, and gasses and her indication that the Plaintiff would need rest breaks. [Tr. 212].

The Commissioner responds that the ALJ's restrictions on sitting, standing, and walking were at least as restrictive as those found by Dr. Furcolo. [Doc. 11 at 19]. The Commissioner maintains that the only difference in these assessments is that the ALJ restricted the Plaintiff to standing and walking for only one hour at a time each. [Doc. 11 at 19]. The Commissioner notes that Dr. Furcolo's check-mark in the "With Rests" column of the worksheet does not indicate whether the Plaintiff requires breaks beyond those customarily afforded to employees. [Doc. 11 at 13]. As to the dusts and fumes limitation, the Commissioner notes that the ALJ stated only that he was crediting Dr. Furcolo's findings as to walking and standing and maintains that the ALJ adequately incorporated these findings. [Doc. 11 at 15].

Initially, the Court must note that medical opinions from treating sources, such as Dr. Furcolo, may be given significant, or even controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994).

In regards to Dr. Furcolo's findings as to sitting, standing, and walking, the Court finds that these limitations were well-supported, were entitled to great weight, and were properly incorporated the ALJ's hypothetical. Dr. Furcolo indicated that the Plaintiff could sit for 4 hours in an 8-hour day, stand for 4 hours in an 8-hour day, and walk for 4 hours in an 8-hour day. [Tr. 212]. She found the Plaintiff could perform each of these tasks for 2 hours at a time. [Tr. 212]. The ALJ's findings mirror Dr. Furcolo's except that the ALJ limited the Plaintiff to walking for only 1 hour at a time and standing for only 1 hour at a time. [Tr. 39].

The Court finds that the ALJ did not err in failing Dr. Furcolo's check-marks in the ambiguous "With Rest," column, because without a definition or more information, this limitation could not be properly considered or incorporated in the ALJ's decision. It is not well-supported by medical evidence, and thus, it is not entitled to controlling weight.

Finally, Dr. Furcolo indicated that the Plaintiff should have "moderate" restriction of exposure to dust, fumes, and gas. [Tr. 212]. Dr. Furcolo did not cite objective medical evidence in support of this finding, and it is not supported by other evaluations in the record. The Plaintiff herself made no mention of this condition in her testimony before the ALJ, and the Plaintiff has failed to cite the Court to any other evidence in the record to support this finding. The Court finds that this restriction is not entitled to controlling weight because it is not well-supported.

In the alternative, even if the dust/fumes restriction were well-supported and entitled to controlling weight, the Plaintiff has not directed the Court to any evidence that would indicate such a restriction would preclude the Plaintiff from performing the light-work jobs, incorporating the Plaintiff's sit/stand/walk restrictions, that the vocational expert testified were available in significant numbers in both the national and local economies. [Tr. 40-41]. Thus, the error would be harmless, and the error would not be such that it denied the Plaintiff a procedural safeguard or benefit.

3.     *The Hypothetical Presented to the Vocational Expert Was Well-Supported and Consistent with the Evidence of Record*

In sum, the Court has considered the Plaintiff's allegations of error as to the ALJ's residual functional capacity determination and the hypothetical presented to the vocational expert. The Court finds that the ALJ made a residual functional capacity determination that was consistent with the medical evidence in the record and, thereafter, incorporated the limitations found in the residual

functional capacity into a hypothetical posed to the vocational expert, Ann V. Thomas. The ALJ did

not err in relying on the vocational expert's response to this hypothetical or her testimony generally.

Accordingly, the Court finds that this allegation of error is not well-taken.

VII.   **CONCLUSION**

The Court finds that the ALJ properly reviewed and weighed the evidence to determine

Plaintiff is capable of performing light work, with certain enumerated restrictions. Substantial

evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[5]

that Plaintiff's Motion For Summary Judgment **[Doc. 8]** be **DENIED** and that the Commissioner's

Motion for Summary Judgment **[Doc. 10]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton

United States Magistrate Judge

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).